UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DISRAELI A. GREY *o/b/o D.I.G.*,

                        Plaintiff,

    v.                                        **DECISION AND ORDER**
                                                    14-CV-127S

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

                        Defendant.

      1.      Plaintiff challenges an Administrative Law Judge's ("ALJ") decision that his 12-year-old child, D.I.G., is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that D.I.G. has been disabled since August 1, 2010, due to attention deficit/hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"), and is therefore entitled to payment of Supplemental Security Income ("SSI") under the Act.

      2.      Plaintiff filed the instant application for SSI benefits on D.I.G.'s behalf on January 24, 2011. His application was denied. A hearing was then held before Administrative Law Judge ("ALJ") David S. Lewandowski on August 20, 2012, at which Plaintiff and D.I.G. appeared with counsel and testified. The ALJ considered the case *de novo*, and on August 30, 2012, issued a decision denying Plaintiff's application for SSI benefits. The Appeals Council denied Plaintiff's request for review on December 31, 2013. Plaintiff filed the current civil action on February 24, 2014, challenging Defendant's final

decision.[1]

3.      On August 25, 2014, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 10.) On November 24, 2014, Defendant filed a cross-motion for the same relief. (Docket No. 14.) For the reasons set forth below, Defendant's motion is granted and Plaintiff's cross motion is denied.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[1] The ALJ's August 30, 2012 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on December 31, 2013.

also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits. See 42 U.S.C. § 1382c. In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled . . . if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i).

7.  Regulations promulgated by the Social Security Administration ("SSA") define "marked and severe functional limitations" in terms of "listing-level severity," *i.e.*, an impairment that meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.926a(a). In accordance with the regulations, a child's functional limitations are evaluated in six broad areas or domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and

relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b).

8.   The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, the child must demonstrate that: (1) he or she is not working; (2) he or she has a "severe" impairment or combination of impairments; and (3) his or her impairment or combination of impairments is of listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See id. A child's medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. See 20 C.F.R. § 416.926a.

9.   Applying the sequential evaluation in the instant case, the ALJ found: (1) D.I.G. had not engaged in any substantial gainful activity (R. at 18);[2] (2) D.I.G. had ADHD, ODD, and borderline intellectual functioning, which constitute severe impairments under the Act (R. at 18); and (3) D.I.G.'s impairments did not meet or medically equal any listed impairments (R. at 18, 26). In addition, the ALJ evaluated D.I.G.'s mental impairments to determine if they were "functionally equivalent" to a listed impairment. (R. at 14-23). The ALJ concluded that D.I.G. did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of the listed impairments. (R. at 18-26). Based on the record, the ALJ ultimately determined that D.I.G. was not under a disability, as defined by the Act, at any time from the filing date through the date of the

---

[2] Citations to the underlying administrative record are designated as "R."

decision, August 30, 2012.  (R. at 26).

10. Plaintiff argues that the ALJ erred by failing to: (1) consider D.I.G.'s 2005 performance IQ score; (2) properly develop the record; and (3) properly evaluate the opinion of D.I.G.'s treating psychiatrist.  Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error. Plaintiff's three aforementioned contentions are unavailing.

11. First, Plaintiff contends that the ALJ failed to consider D.I.G.'s 2005 intelligence testing.  According to a June 28, 2005 report, D.I.G.'s IQ testing yielded a full scale IQ of 72, performance IQ of 70, and verbal IQ of 79 (R. at 195).  But six years later, in an April 26, 2011 report, D.I.G.'s IQ testing yielded a full scale IQ of 72, verbal comprehension index of 75, perceptual reasoning index of 73, working memory index of 80, and processing speed of 88 (R. at 225).  Plaintiff argues that the ALJ provided no rationale for rejecting the 2005 IQ scores.

In considering IQ scores, 20 C.F.R. 404, Subpt. P, App. 1 § 112.00(D)(10) provides that "IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above." In this case, at the time of D.I.G.'s 2005 intelligence testing, D.I.G. was three years old (R. at 194).  Accordingly, at the time of the decision in 2012, the 2005 IQ test results were not current.  The ALJ therefore did not err by not considering them.

Plaintiff relies on Juckett ex rel. K.J. v. Astrue for the proposition that when an ALJ rejects an IQ score without any rationale, the rejection is invalid.  No. 09–CV–708 (FJS/VEB), 2011 WL 4056053, at *7 (N.D.N.Y. June 29, 2011).  But in Jucket, the minor child was born in 1995, and the two IQ tests at issue occurred in 2006 and 2008, making

both of the tests current under 20 C.F.R. 404, Subpt. P, App. 1 § 112.00(D)(10). In this case, only D.I.G.'s 2011 IQ test results were current. The ALJ properly considered these results in determining that D.I.G. was not disabled and properly disregarded the 2005 IQ results that were not current. Accordingly, Plaintiff's first argument fails.

12. Second, Plaintiff argues that the ALJ failed to affirmatively develop the record by not requesting certain mental health treatment records pertaining to D.I.G.'s treatment in 2012 with Monsignor Carr Mental Health Services. Specifically, Plaintiff argues that the ALJ left the record incomplete by not obtaining treatment records from D.I.G.'s therapy sessions with Miguel A. Martinez, LMSW.

The ALJ must affirmatively develop the record. Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). The ALJ must develop the claimant's medical history for at least the twelve months prior to the claimant filing his application. See 20 C.F.R. § 416.912(d); see also Priel v. Astrue, No. 08-CV-0213, 2010 WL 184329, at *4 (W.D.N.Y. Jan. 15, 2010). "[T]he ALJ is only required to obtain additional evidence if the ALJ cannot decide whether a claimant is disabled based on the existing evidence in the record." Walker v. Astrue, No. 11-CV-766S, 2012 WL 4473249, at *3 (W.D.N.Y. Sept. 26, 2012); Priel, 2010 WL 184329 at *4. "The ALJ must only develop [the record] when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision." Walker, 2012 WL 4473249, at *3. Further, the ALJ is not required to discuss or analyze every piece of evidence presented. See Mongeur v. Heckler, 722 F.3d 1033, 1040 (2d Cir. 1983).

Contrary to Plaintiff's claims, the record developed by the ALJ is not incomplete. In his decision, the ALJ states that he has considered all of the relevant evidence in the case record.

> "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e. at home, at school, and in the community.

(R. at 18.)

Plaintiff alleges that D.I.G.'s mental health treatment records, including two "treatment plans," only summarize D.I.G.'s progress and the treatment team's goals for his future progress, and that the ALJ should have further developed the record to obtain specifics regarding D.I.G.'s treatment. But this Court has held that an ALJ need not seek specific treatment notes where a summary of the claimant's treatment is already in the record. See Walker, 2012 WL 4473249, at *3.

Here, the ALJ relied on approximately 51 pages of records from Monsignor Carr Mental Health Services. (R. at 214-17, 247-75, 280-86, 288-96, 298-300.) These records contained treatment summaries and notes, including notes and reports from Mr. Martinez, among other professionals. (R. at 214, 249-50, 255, 263, 271, 284, 286, 291.) The ALJ explicitly relied on Monsignor Carr Mental Health Services records in making his determination, finding no gaps in the record with regard to the treatment records. Thus, the treatment records the ALJ considered provided a sufficient basis upon which to render a decision. Accordingly, Plaintiff's second argument is also unavailing.

13.   Third, Plaintiff alleges that the ALJ failed to properly evaluate the opinion of treating psychologist Dr. Jamie Pabilonia and failed to recontact him before discounting his opinion. Rather, the ALJ found that Dr. Pabilonia's opinion was entitled to little weight

because there were no details supporting his conclusions, and because D.I.G.'s teacher evaluation and consultative examination did not support marked findings. (R. at 20.)

An ALJ may recontact medical sources if evidence in the record is inadequate for the ALJ to render a reasoned disability determination and more information is required to resolve questions. See 20 C.F.R. § 404.1520(c). Where there are no obvious gaps in the record, and where the ALJ already possesses a complete medical history, the ALJ is not required to recontact medical sources. See Pellam v. Astrue, 108 F. App'x 87, 90 (2d Cir. 2013). Further, if the record does not support a treating physician's opinion, it does not necessarily mean that there are gaps in the record triggering mandatory recontact. See Williams v. Astrue, No. 10–CV–499S, 2012 WL 1114052, at *4 (W.D.N.Y. Mar. 30, 2012).

Here, the ALJ cited an August 2012 assessment from Monsignor Carr Mental Health Services that "indicated marked limitations in attending and completing tasks and interacting and relation with others." (R. at 20.) The ALJ continued: "Little weight is afforded to this conclusion as there are no details given to support these conclusions and the teacher evaluation and consultative examination do not support marked findings." Id. The ALJ went on to explain that he gave more weight to the teacher evaluation because the teacher had an opportunity to see D.I.G. on a regular basis and compare D.I.G.'s behavior to that of D.I.G.'s peers. (R. at 21.) The ALJ gave significant weight to the state agency evaluation because it was consistent with the teacher evaluation as well as recent reports on D.I.G.'s progress. Id.

Not only did the ALJ possess adequate information on which to base his judgment, but he also explained his reasoning regarding affording different weight to different records. Plaintiff essentially argues that the ALJ should have sought to reconcile potentially

8

conflicting records coming from Dr. Pabilonia and from the teacher evaluation and consultative examination. But an ALJ need not reconcile every conflicting piece of evidence, so long as he carefully considered the evidence in arriving at his decision. See Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012) (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981)). In his determination, the ALJ did not express any doubts or concerns as to the nature of D.I.G.'s diagnoses or other relevant medical information. The ALJ simply afforded weight of varying degrees to the materials in the record, properly articulating his reasoning for doing so.

Accordingly, this Court finds that the ALJ was not required to recontact Dr. Pabilonia, and that the ALJ's weighing of the evidence was not improper.[3] This Court is satisfied that the ALJ afforded appropriate weight to all of the medical evidence in rendering his decision that D.I.G. is not disabled within the meaning of the Act.

14. After carefully examining the administrative record, including the ALJ's written decision and D.I.G.'s medical records, this Court finds that substantial evidence supported the ALJ's decision that D.I.G. is not disabled within the meaning of the Act. This Court finds that the ALJ thoroughly examined the record and afforded proper weight to all medical evidence in arriving at his conclusion. Finding no reversible error, this Court hereby grants Defendant's Motion for Judgment on the Pleadings and denies Plaintiff's cross motion seeking the same relief.

IT HEREBY IS ORDERED, that Defendant's Cross Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

---

[3] This Court notes that Plaintiff again contends here that the record is incomplete. Based on the earlier discussion of the completeness of the record, the Court need not again address the argument here.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:  March 31, 2015
        Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                  Senior United States District Judge